IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| FOUNDERS INSURANCE COMPANY, | ) | CIVIL 14-00312 LEK-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KIM & JON, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF FOUNDERS INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING THIRD-PARTY DEFENDANT
THE BURLINGTON INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Before the Court are: (1) Plaintiff Founders Insurance

Company's ("Founders") Motion for Summary Judgment ("Founders

Motion"), filed on November 4, 2014; and (2) Third-Party

Defendant The Burlington Insurance Company's ("Burlington")

Motion for Summary Judgment or, in the Alternative, Partial

Summary Judgment ("Burlington Motion," collectively "Motions"),

filed on December 1, 2014. [Dkt. nos. 27, 35.] Defendant/Third-

Party Plaintiff Kim & Jon, Inc. ("K&J") filed its memoranda in

opposition on January 16, 2015, and Founders and Burlington each

filed its reply on January 23, 2015. [Dkt. nos. 42, 43, 47, 51.]

The Court finds these matters suitable for disposition without a

hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice

of the United States District Court for the District of Hawai`i

("Local Rules"). After careful consideration of the Motions,

supporting and opposing memoranda, and the relevant legal authority, the Founders Motion is HEREBY GRANTED IN PART AND DENIED IN PART, and the Burlington Motion is HEREBY GRANTED for the reasons set forth below.

**BACKGROUND**

## I. Procedural Background

On July 8, 2014, Founders filed this declaratory judgment action, pursuant to 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57, requesting declaratory judgments that it has no duty to defend K&J ("Count I") or indemnify K&J ("Count II"), and that it is entitled to reimbursement by K&J ("Count III"), related to the lawsuit Davis v. Custard, et al., Civil No. 13-1-3129-11 (RAN), in the Circuit Court of the First Circuit, State of Hawai`i ("State Case"). On September 24, 2014, K&J filed its answer and a third-party complaint against Burlington ("Third-Party Complaint"), seeking a declaratory judgment that Burlington has a duty to defend and indemnify K&J related to the State Case ("Third-Party Count I") and requesting attorneys' fees and costs related to the State Case and the instant case ("Third-Party Count II"). [Dkt. no. 13.] Founders moves for summary judgment as to all counts in its Complaint, and Burlington moves for summary judgment as to Third-Party Count I.

## II. **Factual Background**

The following facts are undisputed.[1]

On November 27, 2013, Darius Davis ("Davis") filed his complaint ("State Complaint") against Claude Custard ("Custard") and K&J, doing business as Princess Palace aka Club 21,[2] alleging: assault and battery against Custard ("State Count I"); negligence against Custard ("State Count II"); negligence against K&J ("State Count III"); and gross negligence against both Custard and K&J ("State Count IV"). Founders CSOF at ¶¶ 1, 3; Burlington CSOF at ¶¶ 4,6; see also Founders CSOF, Decl. of

---

[1] On November 4, 2014, Founders filed its Separate and Concise Statement in Support of Plaintiff Founders Insurance Company's Motion for Summary Judgment ("Founders CSOF") and, on December 1, 2014 Burlington filed its Separate and Concise Statement in Support of the Burlington Insurance Company's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Burlington CSOF"). [Dkt. nos. 28, 35-2.] Rather than filing its own counter-statements, K&J filed a CSOF "in Support of its Memorandum in Opposition to" the Motions ("K&J CSOF"), to which Burlington filed a response ("Burlington Counter-CSOF"). [Dkt. nos. 44, 48.] Insofar as K&J failed to oppose the Founders CSOF and Burlington CSOF, the facts in those CSOFs are deemed admitted. See Local Rule LR56.1(g) ("For purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party."). The facts that follow in Discussion Section I come from the Founders CSOF and the Burlington CSOF and the documents that they and K&J cite, but also are largely consistent with the K&J CSOF. It is the interpretation of these facts, as discussed more fully below, which is at the center of this case and the Motions.

[2] For clarity, the Court will refer to the Defendant/Third-Party Plaintiff as "K&J," but the night club where the altercation occurred as "Princess Palace." It also refers to Founders and Burlington collectively as "the Insurers."

Mark J. Kaetsu ("Kaetsu Decl."), Exh. A. (State Complaint) at

pgs. 4-9.[3]

The State Complaint alleges that, on or about

December 3, 2011, an altercation occurred between Custard and

Davis, who were then patrons at Princess Palace ("the Incident").

It alleges:

> 16. While Defendant Princess Palace served alcohol to Defendant Custard, Defendant Custard became intoxicated or otherwise under the influence of liquor.

> 17. While Defendant Custard was under the influence of liquor, Defendant Princess Palace continued to serve alcohol to Defendant Custard.

> 18. Because of his intoxication, Defendant Custard got into an argument, quarrel and/or altercation with Plaintiff and his friends on the Princess Palace premises.

> 19. During this argument, quarrel, and/or altercation, Defendant Princess Palace did nothing to prevent or suppress this conduct.

> 20. As a result, this argument, quarrel and/or altercation escalated to Plaintiff being shot Plaintiff [sic] multiple times by Defendant Custard on the Princess Palace premises.

[State Complaint at ¶¶ 16-20.]

While State Count I alleges an intentional assault and

battery by Custard, [id. at ¶¶ 22-24,] State Count II alleges

---

[3] Burlington also filed the State Complaint as an exhibit to its CSOF. [Burlington CSOF, Request for Judicial Notice in Support of the Burlington Insurance Company's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, Exh. 1.]

that the shooting was due to Custard's negligence [id. at ¶¶ 25-27]. Specifically, State Count II alleges that Custard was negligent in:

      a.    Carrying and/or possessing a deadly weapon while under the influence of alcohol;

      b.    Operating and/or using a deadly weapon in a reckless and/or careless manner;

      c.    Operating and/or using a deadly weapon with intent to kill and or/cause serious bodily harm and injury; and

      d.    Such other acts of negligence to be disclosed during discovery and/or shown at trial.

[Id. at ¶ 26.]

In State Count III, the Complaint alleges that K&J was negligent in: serving alcohol to people who were known to be intoxicated and/or heavy drinkers; permitting and encouraging intoxicated individuals to continue drinking on its premises; failing to prevent or suppress disorderly conduct; failing to remove intoxicated individuals from Princess Palace; and failing to have proper security and/or supervision near its premises. [Id. at ¶¶ 29a.-h.] The State Complaint alleges that the shooting incident "was directly and proximately caused by" these negligent acts. [Id. at ¶ 29.] Similarly, State Count IV centers on the allegation that K&J "acted in conscious disregard for the safety of others" in violating statutes regulating the service of liquor, which caused the shooting. [Id. at ¶ 34.] Essentially, State Counts III and IV allege that K&J is liable

for the incident due to its purportedly illicit service of beverages to intoxicated individuals, and its failure to stop the altercation before it escalated.

Founders issued liquor liability insurance, policy number ELHI100022, to K&J ("Founders Policy"), which was in effect on December 3, 2011. [Founders CSOF at ¶¶ 5-6 (citing id., Declaration of John Anderson, Exh. B (Founders Policy)).] The Founders Policy states:

> - We will pay those sums that an "insured" becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on an "insured" by reason of the selling, serving, or furnishing of any alcoholic beverage; and
>
> - We will defend an "insured" against seeking those damages.

[Founders Policy at 4.[4]] However, among the "Exclusions to Coverage" is the following:

> This insurance does not apply to:
>
> K.   Assault and/or Battery
>
> "Injury" arising from:
>
> (1) assault and/or battery committed by an "insured", any "employee" of an "insured", or any other person;
>
> (2) The failure to suppress or prevent assault and/or battery by any person in

_____

[4] Since each policy in this case is comprised of multiple documents, the Court refers to the exhibit's page number from the court's Case Management/Electronic Case Files (CM/ECF) system in discussing these exhibits.

> subparagraph k.(1) above; [or]
>
> (3) The selling, serving or furnishing of alcoholic beverages which results in an assault and/or battery; . . .
>
> . . . .

[Id. at 5 ("Exclusion K") (emphasis in original).] On April 1, 2014, counsel for Founders sent a letter to K&J agreeing to provide it with a defense in the State Case. The letter included a reservation of rights, and argued that K&J was not covered due to Exclusion K. [Founders CSOF at ¶ 9 (citing Kaetsu Decl., Exh. C ("Reservation of Rights Letter")).] Exclusion K is also the basis for the instant case, and the Founders Motion. [Complaint at ¶¶ 9-17; Mem. in Supp. of Founders Motion at 2-3, 7-9.]

Similarly, Burlington issued commercial general liability insurance, policy number 087B005102, to K&J ("Burlington Policy"), which was also in effect on December 3, 2011. [Burlington CSOF at ¶ 1 (citing id., Declaration of Liz Jones, Exh. A (Burlington Policy)).] The Burlington Policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

[Burlington Policy at 28.] One exclusion, titled "**EXCLUSION -**

**ASSAULT, BATTERY OR OTHER PHYSICAL ALTERCATION**," reads in

pertinent part:

**D.**   This insurance does not apply to:

  **a.** **Assault Battery Or Other Physical Altercation**

    "Bodily injury" or "property damage":

    (1) Expected or intended from the standpoint
    of any insured.

    (2) Arising in whole or in part out of any
    "assault" or "battery" committed or attempted
    by any person.

    (3) Arising in whole or in part out of any
    attempt by any person to avoid prevent,
    suppress or halt any actual or threatened
    "assault" or "battery."

    (4) Arising in whole or in part out of any
    actual or threatened verbal or physical
    confrontation or altercation committed or
    attempted by any person, or any attempt by
    any person to avoid, prevent, suppress or
    halt any actual or threatened verbal or
    physical confrontation or altercation.

. . . .

**F.**   This insurance does not apply to:

  **Assault, Battery Or Other Physical Altercation**

  Any "damages arising out of any actual, alleged or
  threatened "assault" or "battery".

**G.**   The exclusions added in paragraphs **D**, **E** and **F** of
  this endorsement apply to all acts or omissions,
  including any act or omission in responding to or
  failing to respond or render aid, medical or
  otherwise, to any victim of the "assault" or
  "battery", and all theories of liability (direct
  or vicarious) asserted against any insured,
  including but not limited to all theories of

negligence, gross negligence, recklessness or
intentional tort and shall not be subject to any
severability or separation of insureds provision
in the policy.

**H.** The following are added to the **Definitions** Section
of this policy:

"Assault" means any willful attempt or threat to
inflict injury upon the person of another, when
coupled with an apparent present ability so to do,
and any intentional display of force such as would
give a victim reason to fear or expect immediate
harm.

"Battery" means wrongful physical contact with a
person without his or her consent that entails
some injury or offensive touching.

[Id. at 53-54 (Form BG-G-042 02 11 ("Exclusion BG-11")) (emphases

in original).]  On March 3, 2014, Burlington disclaimed coverage

and a duty to defend in the State Case.  [Burlington Counter-CSOF

at ¶ 29.]  Burlington argues in its motion that K&J is not

covered related to the Incident due to Exclusion BG-11.

[Burlington Motion at 1-2.]

### DISCUSSION

In its Complaint and motion, Founders argues that

Exclusion K precludes coverage for K&J related to the Incident,

and therefore it has no duty to defend or indemnify K&J.  [Mem.

in Supp. of Founders Motion at 2-3, 7-9.]  Likewise, Burlington

argues in its motion that Exclusion BG-11 excludes coverage for

all claims in the State Complaint.  [Burlington Motion at 1-2.]

K&J concedes that "the only dispute is over whether an

'assault and/or battery' exclusion contained within [each Policy]

9

operates to relieve [the insurer] of its duty to provide K&J coverage[.]" [Mem. in Opp. to Founders Motion at 13.[5]] K&J argues that summary judgment is premature since material issues remain in dispute as to whether: (1) State Claims III and IV fall completely within the Policies' Exclusions;[6] and (2) K&J reasonably expected the Policies to cover assaults such as the Incident.[7] The Court considers each of these arguments in turn, after first considering its jurisdiction over the case.

## I.  Jurisdiction

As an initial matter, K&J requests in its memoranda in opposition that this Court decline to assert jurisdiction in this case.  It argues that: in declaratory judgment actions, jurisdiction is discretionary; the insurance issues here turn on Hawai`i state law; and this dispute grows out of the Incident and

---

[5] Since the memoranda in opposition are nearly identical, the Court will only cite to the Memorandum in Opposition to the Founders Motion, even where the same arguments can be found in both memoranda.  The Court will only refer to the Memorandum in Opposition to the Burlington Motion where an argument appears solely in that memorandum.

[6]  In this Order, the Court refers to the Founders Policy and the Burlington Policy collectively as the "Policies," and Exclusion K and Exclusion BG-ll as the "Exclusions."

[7] K&J also argues that the Court should delay ruling on the Motions since material issues of fact remain as to whether the insurance agent who sold the Policies to K&J had actual or apparent authority to bind the Insurers.  As the Court describes below, see infra Discussion Section IV, this issue is not material to the Motions, and thus the Court does not analyze it at length in this Order.

thus this case is intertwined with the State Case. [Id. at 28-30.] The Court rejects this argument.

The Ninth Circuit has explained:

> The Brillhart factors remain the philosophic touchstone for the district court.[8] The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation. [Cont'l Cas. Co. v.] Robsac [Indus.], 947 F.2d [1367,] 1371-73 [(9th Cir. 1991)]. If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1366-67 (9th Cir. 1991). The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. Id. at 1367. Nonetheless, federal courts should generally decline to entertain reactive declaratory actions.
>
> However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically. "We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage." Aetna Cas. & Sur. Co. v. Merritt, 974 F.2d 1196, 1199 (9th Cir. 1992).

Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) (footnote omitted). Contrary to K&J's arguments, the Brillhart factors clearly weigh in favor of this Court retaining jurisdiction.

---

[8] The Ninth Circuit here refers to Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942).

11

Although the issues in this case do turn on state law, they are not in any way intertwined with the issues in the State Case and, as discussed more fully below, this Court need not determine whether an assault actually occurred. Thus, there will be no needless determination of state law, or danger of duplicative litigation. Further, K&J does not argue, and there is no evidence in the record, that Founders has engaged in forum shopping. As in many insurance disputes, Founders has properly brought this action in this district court based on diversity jurisdiction. Finally, none of the other considerations that the Ninth Circuit discussed in <u>Dizol</u> are present here: this action serves a useful purpose; there is no entanglement of the issues between this case and the State Case, and thus no danger of a res judicata advantage; and it would actually be inconvenient to decline jurisdiction at present, since the briefing on the Motions is complete and this Order disposes of most of the case. <u>See</u> <u>Dizol</u>, 133 F.3d at 1225 n.5. For all of these reasons, the Court CONCLUDES that it is proper to retain jurisdiction and DENIES K&J's request to decline it.

The Court now turns to the parties' substantive arguments.

## II. <u>Coverage</u>

K&J argues, in essence, that even if the basic theory of Custard's assault for intentionally shooting Davis falls

within the Exclusions, K&J could theoretically be found liable if Custard inadvertently, but negligently, shot Davis and the fact-finder concluded that K&J's negligent practices were a proximate cause for the harm. K&J posits that the gun might have discharged accidentally or Custard may have "drawn his firearm in self-defense and negligently injured" Davis. [Mem. in Opp. to Founders Motion at 5, 15-16, 21-22.]

The Insurers attack this argument on two grounds. First, they argue that these theories are inconsistent with the allegations in the State Complaint. Second, even if alleged, they still fall within the Exclusions, and thus K&J is not covered related to the Incident.

### A. **The Claims**

The Insurers argue that this Court should apply the "complaint allegation rule" to determine whether there is any duty to defend. See, e.g., Founders Reply at 5-6; Burlington Reply at 2-3. The Court agrees that the rule applies. See e.g., Burlington Ins. Co. v. Oceanic Design & Const., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("Hawaii adheres to the 'complaint allegation rule.'" (quoting Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 85 Hawai`i 286, 944 P.2d 83, 88 (App. 1997)). Further, it recently described the scope of the duty to defend:

> Regarding the duty to defend, the Hawai`i
> Supreme Court has held:

> [T]he duty to defend rests primarily on the
> possibility that coverage exists. This
> possibility may be remote but if it exists,
> the insurer owes the insured a defense. All
> doubts as to whether a duty to defend exists
> are resolved against the insurer and in favor
> of the insured.
>
> Accordingly, in connection with the issue of
> its duty to defend, [the insurer bears] the
> burden of proving that there [i]s no genuine
> issue of material fact with respect to
> whether a possibility exist[s] that [the
> insured] would incur liability for a claim
> covered by the polic[y]. In other words,
> [the insurer is] required to prove that it
> would be impossible for the [claimant] to
> prevail against [the insured] in the
> underlying lawsuit[] on a claim covered by
> the policies. Conversely, [the insured's]
> burden with respect to its motion for summary
> judgment [i]s comparatively light, because it
> ha[s] merely to prove that a possibility of
> coverage exist[s].

Tri-S Corp. v. W. World Ins. Co., 110 Hawai`i 473,
488, 135 P.3d 82, 97 (2006) (some alterations in
Tri-S) (quoting Dairy Rd. Partners v. Island Ins.
Co., Ltd., 92 Hawai`i 398, 412–13, 992 P.2d 93,
107–08 (2000)).

On the other hand, the Hawai`i Supreme Court
has also held that, "'if the plaintiff's complaint
against the insured alleged facts which would have
supported a recovery covered by the policy, it was
the duty of the defendant to undertake the defence
[sic], **until it could confine the claim to a
recovery that the policy did not cover**.'"
Commerce & Indus. Ins. Co. v. Bank of Hawaii, 73
Haw. 322, 326–27, 832 P.2d 733, 736 (1992)
(emphasis added) (alteration in Commerce & Indus)
(quoting Lee v. Aetna Casualty & Sur. Co., 178
F.2d 750 (2d Cir. 1949) (Hand, J.)). That is, the
duty to defend only extends to "where coverage is
applicable." Nautilus Ins. Co. v. Lexington Ins.
Co., 132 Hawai`i 283, 294, 321 P.3d 634, 645
(2014) (citations omitted).

14

Burlington Ins. Civil Co. v. Sanford's Serv. Ctr., Inc., Civil
No. 14-00151 LEK-KSC, 2014 WL 7205483, at *4 (D. Hawai`i Dec. 16,
2014) (alterations in Sanford's).

The Insurers argue that K&J's theory of a negligent
shooting was not properly alleged.  See, e.g., Burlington Reply
at 5-8.  The Court disagrees.  Although it is not central to the
State Complaint, it would be possible, within the allegations of
the Complaint, for K&J to be held liable even if the fact-finder
determines Custard did not intentionally shoot Davis.  The
general allegations, *supra* Background Section II, allege that
Custard's intoxication caused the altercation, which led to the
shooting, but not that Custard necessarily intended to shoot
Davis.  Furthermore, State Count II specifically alleges that
Custard was negligent in possessing a gun while intoxicated at
Princess Palace and for using the gun carelessly.  [State
Complaint at ¶ 26a., b.]  Thus, if the fact-finder found that
Princess Palace was negligent in serving Custard or not
intervening in altercation, for instance, it could find K&J
liable even if it determined that the shooting was accidental.

Since the Insurers' first argument fails, the issue
then is whether such liability could fall outside of the
Exclusions such that there is a "possibility that coverage
exists."  See Sanford's, 2014 WL 7205483, at *4.

15

B.    **The Policies**

1.    **Founders**

Exclusion K provides that there is no coverage for the "failure to suppress or prevent assault and/or battery" or the "selling, serving or furnishing of alcoholic beverages which results in an assault and/or battery[.]"  [Founders Policy at 5.] Therefore, it clearly applies to the vicarious liability theories in State Counts III and IV.  However, as K&J points out, the Founders Policy does not define "assault" or "battery."  [Mem. in Opp. to Founders Motion at 13.]  Thus, if the terms "assault" and "battery" in Exclusion K could be construed as not extending to K&J's theories of a negligent shooting, there remains a possibility of coverage.

The sum and substance of K&J's argument on this point is the following:

> "A person commits the offense of assault in the first degree if the person **intentionally** *or* **knowingly** causes serious bodily injury to another person."  HRS § 707-710 (Lexis 2014) (emphasis added).  Moreover, "'Battery', is an unlawful touching of another person without his [or her] consent."  <u>Ozaki v. Ass'n of Apt. Owners</u>, 87 Hawai`i 273, 289, 954 P.2d 652, 668 (App. 1998) (citations and quotation marks omitted).  In the words of the Hawai`i courts, "[s]ince **battery is a matter of the worst kind of intentions**, it is a tort which frequently justifies punitive damages."  <u>Id.</u> (emphasis added).
>
> . . . .
>
> . . . In neither [negligence theory] could it be

16

said that Custard committed an assault and battery necessary for the exclusion to apply.

[Mem. in Opp. to Founders Motion at 14, 16.[9]]  Thus, K&J argues that, under Hawai`i law, both "assault" and "battery," necessarily require intent.  The Court finds this argument unpersuasive.

First, assault does not necessarily require intent.  Although under Hawai`i criminal law, **first** degree assault must be done "intentionally" or "knowingly," see Haw. Rev. Stat. § 707-710, the related statute on **third** degree assault provides: "A person commits the offense of assault in the third degree if the person: . . . (b) Negligently causes bodily injury to another person with a dangerous instrument," see Haw. Rev. Stat. § 707-712.  Thus, by K&J's own logic, using Hawai`i criminal statutes to define the Founders Policy, "assault" would cover the purported negligent, but accidental, shooting.[10]

---

[9] K&J also argues that there are genuine issues of material fact as to whether Custard actually committed the assault since, for example, the Insurers have not offered a record of conviction.  [Mem. in Opp. to Founders Motion at 15.]  The Court finds it immaterial whether or not a state court did (or does) find that Custard committed the act.  The issue is whether a fact-finder **could** conceivably find that Custard accidentally or carelessly shot Davis.  See Sanford's, 2014 WL 7205483, at *4.

[10] Moreover, Black's Law Dictionary 137-38 (10th ed. 2014) shows that assault does not require intent.  For example, it defines "simple assault" as follows:

> "(1) Simple Assault.  A person is guilty of assault if he: (a) attempts to cause or purposely,
> (continued...)

17

Second, battery does not traditionally require intent to harm. If battery is simply an "unlawful touching," see <u>State v. Pesentheiner</u>, 95 Hawai`i 290, 298, 22 P.3d 86, 94 (Ct. App. 2001) ("battery is an unlawful touching of another person without his or her consent" (alterations, citation and internal quotation marks omitted)), it would cover K&J's negligence theories.

<u>Ozaki</u> is not to the contrary. The legal proposition that K&J cites does not apply since it analyzed whether, in a wrongful death lawsuit, battery could give rise to punitive damages, not whether intent itself was required for liability for battery. <u>Ozaki</u>, 87 Hawai`i at 289, 954 P.2d at 668. Further, K&J misquotes the statement from the case. In <u>Ozaki</u>, the Court quoted Prosser and Keeton § 9, at 40: "Since battery **usually** is a matter of the worst kind of intentions . . . ." <u>Id.</u> (emphasis added). K&J's omission of "usually" makes it appear that battery must include intention; however, the Hawai`i Intermediate Court of Appeals ("ICA") did not hold so broadly.

Moreover, although battery often includes some form of intent, it is not necessarily the intent to harm. Rather, as Black's Law Dictionary 182 (10th ed. 2014) describes, the act

---

[10](...continued)
knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon; or ( c ) attempts by physical menace to put another in fear of imminent serious bodily injury." Model Penal Code § 211.1 (1997).

must simply be done in a "hostile manner."[11]  Both the State

Complaint, and K&J's negligence theories provide that Custard had

that hostile intent, whether or not the gun accidentally

discharged.

Since both assault and battery commonly are not limited

to intent to harm – but rather encompass negligent acts, such as

those argued by K&J – the Court FINDS that the Incident

necessarily falls within Exclusion K.

## 2.   **Burlington**

Exclusion BG-11 in the Burlington Policy clearly

encompasses all of K&J's theories, in part, because it supplies

---

[11] The complete definition of the tort of battery from
Black's Law Dictionary is as follows (bold added; italics in
original):

> A nonconsensual, intentional, and offensive
> touching of another without lawful justification,
> but not necessarily with the intent to do harm or
> offense as required in a criminal battery. . . .

> "A *battery* is the actual application of force to
> the body of the prosecutor.  It is, in other
> words, the assault brought to completion.  Thus,
> if a man strikes at another with his cane and
> misses him, it is an assault; if he hits him, it
> is a battery.  **But the slightest degree of force
> is sufficient, provided that it be applied in a
> hostile manner**; as by pushing a man or spitting in
> his face.  Touching a man to attract his attention
> to some particular matter, or a friendly slap on
> the back is not battery, owing to the lack of
> hostile intention."  4 *Stephen's Commentaries on
> the Laws of England* 62–63 (L. Crispin Warmington
> ed., 21st ed. 1950).

broad definitions for assault and battery.  It states, in
pertinent part: "This insurance does not apply to: 'Bodily
injury' . . . (2) Arising in whole or in part out of any
'assault' or 'battery' committed or attempted by any person."
[Burlington Policy at 53.]  While the definition of assault in
Exclusion BG-ll includes willful acts, it also includes threats.
[Id. at 53-54.]  Further, the definition of battery clearly
includes unintentional acts: "'Battery' means wrongful physical
contact with a person without his or her consent that entails
some injury or offensive touching."  [Id. at 54.]  Thus, assault
and battery, as defined by the Burlington Policy, covers an
accidental or careless shooting.

Moreover, there is an even broader clause within
Exclusion BG-11, which does not rely on the definitions of
assault and battery.  It states: "This insurance does not apply
to: 'Bodily injury' . . . (4) Arising in whole or in part out of
any actual . . . physical altercation committed . . . by any
person[.]"  [Id. at 53.]  Whether or not the shooting was
accidental, it arose from a physical altercation and thus falls
within this exclusion.

Furthermore, the Burlington Policy clearly covers the
theories of vicarious liability stated in State Counts III and
IV.  Exclusion BG-11 extends to "all theories of liability
(direct or vicarious) asserted against any insured, including but

not limited to all theories of negligence, [or] gross negligence[.]" [Id.] For all of these reasons, the Court FINDS that, applying the complaint allegation rule, there is no possibility of coverage under the Burlington Policy.

## C. **Conclusion**

Since the Insurers have shown that there is no genuine issue of material fact as to whether there is any possibility of coverage under either of the Policies, the Court CONCLUDES that the Policies do not confer upon the Insurers any duty to defend. See Sanford's, 2014 WL 7205483, at *4.[12]

## III. **Reasonable Expectations**

K&J argues that, even if the Policies do not technically cover the Incident, the Insurers owe it the duty to defend since it had a reasonable expectation that the Policies would cover an assault such as the Incident. [Mem. in Opp. to Founders Motion at 22-26.] In support of its argument, K&J offers the Declaration of Charles R. Stevenson ("Stevenson

---

[12] Great Southwest Fire Insurance Co. v. H.V. Corp., 3 Haw. App. 664, 658 P.2d 337 (1983), which K&J relies heavily on, see Mem. in Opp. at 16-18, 21-22, is not to the contrary. The assault and battery exclusion at issue in that case was not nearly as detailed as the Exclusions in this case, and thus the ICA was unable to determine whether there was a possibility of coverage. Further, the Court questions whether Great Southwest Fire Insurance is still good law insofar as the ICA assumed it was material whether the defendant in the underlying case had actually committed the assault, which is clearly not required under the complaint allegation rule or the law set forth above.

Decl."). Stevenson, the manager of Princess Palace,[13] attests that: although he asked whether the Policies would cover K&J for anything that might happen in a night club, the insurance agent who sold the Policies to him never reviewed the assault and battery exclusions; he assumed that assault would be covered; he never reviewed the Policies or received copies of them; and he would never have purchased the Policies if he had known about the Exclusions, and would have purchased additional coverage to cover such incidents. [K&J CSOF, Stevenson Decl. at ¶¶ 5-6, 9-12, 14.]

K&J concedes, however, that "the 'reasonable expectations principle is a rule of construction to be applied when policy provisions which would deny coverage are unclear or inconspicuous.'" [Mem. in Opp. to Founders Motion at 23 (quoting Crawford v. Ranger Ins. Co., 653 F.2d 1248 (9th Cir. 1981)).] The Court finds that the Exclusions are neither unclear nor inconspicuous.

First, K&J does not argue that the Exclusions are ambiguous or unclear and, in any event, the Court finds that they are not.[14] Second, they are not inconspicuous. K&J argues that

_____

[13] Stevenson actually attests that he is the manager of "Prince Palace," [Stevenson Decl. at ¶ 1,] but the Court assumes that this is a typographical error.

[14] Although the Court has analyzed the application of the Exclusions to the State Complaint at some length in this Order, it does not find that the Exclusions themselves are ambiguous. From their plain language, the Exclusions apply to altercations

(continued...)

they are "buried" in the Policies.  [<u>Id.</u> at 1, 6, 7, 8, 13, 23, 24.]  With regard to the Founders Policy, the first page states: "IN CONSIDERATION OF YOUR PAYMENT OF THE PREMIUM, IN RELIANCE UPON YOUR STATEMENTS IN ANY APPLICATION FORMS (ALL OF WHICH ARE INCORPORATED HEREIN), AND SUBJECT TO ALL LIMITS, **EXCLUSIONS**, CONDITIONS, AND OTHER TERMS OF THIS POLICY, WE AGREE WITH YOU AS FOLLOWS."  [Founders Policy at 4 (emphasis in original; bold added).]  Also on the first page of the policy, immediately after Section 1, providing for the scope of coverage, Section 2, titled "<u>Exclusions to Coverage</u>," begins.  [<u>Id.</u> (emphasis in original).] Then, on the second page, Exclusion K is clearly enumerated and titled, "Assault and/or Battery," in the same font and size as the other exclusions and terms of the policy.  The Court FINDS that Exclusion K is neither inconspicuous nor "buried" within the seven-page Founders Policy.  <u>See</u> <u>Crawford</u>, 653 F.2d at 1251 (applying Hawai`i law and holding that "exclusionary clause [was] not 'buried' inconspicuously in the policy," because "the heading and body of the exclusions section [was] the same type size and intensity as the other sections of the policy").

The Court reaches the same conclusion as to the Burlington Policy.  Although the Burlington Policy with its addenda, including numerous exclusions, is much longer than the

---

[14](...continued)
among Princess Palace patrons and any vicarious liability that might arise for K&J from such altercations.

Founders Policy, Exclusion BG-11 is not inconspicuous.  It is set forth in its own document, titled – in large, bold, capital letters – "**EXCLUSION - ASSAULT, BATTERY OR OTHER PHYSICAL ALTERCATION.**"  [Burlington Policy at 53.]  Further, the heading addressing the scope of the exclusion is in bold, and the body of the exclusion is in the same font and size as the rest of the policy.  [Id. at 53-54.]  Last, Exclusion BG-11 is identified along with approximately thirty forms in a two-page "LISTING OF FORMS AND ENDORSEMENTS" that immediately precedes the policy itself.  [Id. at 10-11.]  For these reasons, the Court FINDS that Exclusion BG-11 is neither inconspicuous nor "buried" within the Burlington Policy.

Since the Exclusions are neither unclear nor inconspicuous, the "reasonable expectations principle" does not apply.  As explained in Crawford: "As noted above this policy is not ambiguous nor is the exclusionary clause inconspicuously placed in the policy.  Therefore, the reasonable expectations principle is inapposite."  653 F.2d at 1251 (citation omitted); see also Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co., 117 Hawai`i 357, 368, 183 P.3d 734, 745 (2007) ("These reasonable expectations are derived from the insurance policy **itself**, which is subject to the general rules of contract construction." (emphasis added) (alteration, citation, and internal quotation marks omitted)).  Since the Court FINDS that

24

the "reasonable expectation principle" does not apply, K&J is bound by the unambiguous terms of the Policies.[15]

## IV. **Conclusion**

Since the Policies do not cover K&J related to the State Case, and the reasonable expectations principle does not apply, there is no genuine issue of material fact as to whether the Insurers have a duty to defend K&J. No additional discovery, which K&J requests, could prove otherwise.[16] See Fed. R. Civ. P. 56 ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

Further, since they do not have a duty to defend, the Insurers do not have a duty to indemnify either. See Nautilus Ins., 132 Hawai`i at 289, 321 P.3d at 640 (citing Dairy Road Partners, 92 Hawai`i at 412, 992 P.2d at 107) ("the duty to

---

[15] Other than baldly arguing that it should not be, K&J does not provide any legal authority for the proposition that it should not be bound by the terms of the Policies, which it concedes that it purchased.

[16] To the extent that K&J believed that it was misled by Burlington or Founders, see, e.g., Mem. in Opp. at 23-28, it was free to bring a counter- or third-party claim. However, it appears that it may have chosen not to do so because the actual party that misled it, if any did, is not a party to this action. Burlington offers evidence that K&J engaged its own insurance broker, Atlas Insurance Agency, Inc. ("Atlas"), which worked with Burlington's broker, Hull & Company, Inc. See Burlington Counter-CSOF at ¶¶ 15-27; id. Decl. of John T. Kelner & Exhs. 1-5. Based on the Stevenson Declaration, it would appear that K&J takes issue with Atlas's conduct, not Burlington's or Founders'.

defend is broader than the duty to indemnify"). The Court thus GRANTS summary judgment for Founders as to Counts I and II in the Complaint, and GRANTS summary judgment for Burlington on Third-Party Count I. Similarly, the Court DISMISSES Third-Party Count II. Since Burlington has no duty to defend or indemnify K&J, it cannot be liable to K&J for attorneys' fees and costs in this case or the State Case.

As to Count III of Founders' Complaint, Founders apparently moves for summary judgment on this claim as well. [Founders Motion at 1-2 ("[Founders] respectfully moves this Honorable Court for an order of granting summary [sic] in its favor against [K&J] as to all counts in the Complaint." (bracketed material in original omitted)).] However, Founders has neither mentioned reimbursement in any of its moving papers nor the sum that it believes that it is entitled to for its defense. The Court therefore DENIES the Founders Motion as to Count III, since it has made no showing on this claim. Founders may renew its motion as to Count III should it so choose, including the sum that it seeks and support for such sum.

## CONCLUSION

On the basis of the foregoing, Founders Insurance Company's Motion for Summary Judgment, filed on November 4, 2014 is HEREBY GRANTED IN PART AND DENIED IN PART; and The Burlington Insurance Company's Motion for Summary Judgment or, in the

26

Alternative, Partial Summary Judgment, filed on December 1, 2014, is HEREBY GRANTED in its entirety.

There being no remaining claims against it in this case, the Court DIRECTS the Clerk's Office to TERMINATE Burlington as a party on **March 16, 2015**, unless K&J files a timely motion for reconsideration of the instant Order.


IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII,



  /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge




FOUNDERS INSURANCE COMPANY VS. KIM & JON, INC.; CIVIL 14-00312
LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF
FOUNDERS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING THIRD-PARTY DEFENDANT THE BURLINGTON INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT